We'll continue now with Appeal 25-1546, Jezior v. City of Chicago. Mr. Fox, we'll begin with you. Good morning, Your Honors. My name is Ed Fox. I'm representing the plaintiff in this matter, Michael Jezior. This case is here following the grant of a summary judgment in favor of the defendant, the City of Chicago, which is through the Fire Department. Jezior was, this is an ADA case, and Jezior was a member of the Fire Department, a longtime member of the Fire Department when, in 2013, he had a stroke. Following the stroke, he had some disabilities in his leg and his arm. His movement was restricted, and he was unable to continue doing the typical firefighting duties of fighting fires. In 2014, through the Fire Department, Jezior applied for and received an accommodation to work at the airport as a procurement officer. This required him to do certain officer and office and procurement duties and work on the computer. It's important to note that this is an established position. At the airport, the duties did not have to be modified for that position for Jezior to do the job. He was accommodated because they gave him that position because he was able to physically do that job. Previous to him taking that job, Mr. Jezior had taken the lieutenant exam, and he was put on a promotion list. Roughly seven years after he started that job as an engineer paramedic, his number came up, and he was received a promotion. He was set to be promoted. Everybody in his chain of command, including his supervisor, people in human resources, and others were expecting him to go to the academy and come back to them, but on his first day at the lieutenant academy, Commissioner Ford saw Mr. Jezior at the academy, and Commissioner Ford saw that he was disabled because he had walked with a cane, so forth, and he then denied his promotion without having any discussion with him about the job he was doing and the functions of it or without regard to any other jobs in the Fire Department that somebody could do as a lieutenant, of which there were many. Jezior had been, as I said, Jezior had been doing this job for roughly seven years as an engineer paramedic in that rank. Primarily, this case is about the defendant not accommodating him into that position as a lieutenant. The defendant is given two shifting reasons for the denial. Commissioner Ford was the requirement that the Fire Department accommodate him in that job at that rank as opposed to offering another job at the same rank with accommodations. There's no specific requirement that they have to give him that job. The law says, and what should be followed, that they're supposed to reasonably accommodate him if it's reasonable to do so, and that's what this case is about, the reasonability of being able to accommodate him into that job as a lieutenant, and the defendant is given two shifting reasons for the denial. Commissioner Ford, as I indicated, was a decision maker, and what happened was he told Brian Helmholtz, who was a Deputy Fire Commissioner, that he was denying the promotion to tell Jezior that. According to Deputy Fire Commissioner Helmholtz, Ford told him he wouldn't allow Jezior to stay in that same position in the airport as a lieutenant. Contrary to this, though, Ford testified in his deposition that he denied the promotion because Jezior was disabled and he didn't receive medical paperwork indicating Jezior could work as a lieutenant in any job because of his disability, even though he's perfectly suited to the job he had been doing, and there are other jobs in the Fire Department that lieutenants could do without having to fight fires. Following the directive from Commissioner Ford, Brian Helmholtz then set up a meeting with Jezior and his union rep to discuss the situation and the denial, and Helmholtz indicated he would try to get Jezior a different job at the Fire Prevention Bureau that he could possibly do. Is that a mobile job? I'll be asking the same question to the city. It just strikes that the Fire Prevention Bureau, it seems to me the person's got to go around and check these things out, right? Right, and there's different jobs there. Oh, there's different jobs there. Right, but many jobs do require inspections of buildings, climbing stairs, and doing the sorts of things, some of which Jezior could do, other things he could not do. Helmholtz testified, but when asked at his deposition about why the promotion was denied, Helmholtz testified at the airport, he testified that there was no budget line for it, so he gave a different reason than Ford did. The evidence in this case overwhelmingly showed that both of those reasons, whether it was because the Ford's reason he was disabled or that there was no budget line for it, are pretextual. Budget lines for promotions are routinely solved by various means, including including borrowing budget lines from other departments and restructuring the job descriptions to make it work. This was the testimony of virtually every person that testified to this, including the defendant's witness, including Brian Helmholtz, who made the comment about the budget line because he testified himself he was aware of people that, of budget line situations that were borrowed and made happen. Tim Sampy, a former deputy chief, former district chief, testified at length about how budgets are almost never an impediment, and in fact he testified at length of how it's done, and typically it's done by borrowing a budget from another department or division where you can restructure job position and make it happen. Questions about some comparators or purported comparators. Did McGill hold a higher rank than plaintiff? He had a, it was an odd situation as I understand it. He had an exempt position, but then he was at the lieutenant academy himself and they wanted him to be able to fill, he wanted to be able to fill his job, he wanted to be able to get the promotion at the academy to lieutenant for pension reasons that I quite don't, quite frankly don't understand, but McGill held it, was at the lieutenant academy, but he was able to get promoted at the same time to lieutenant position, but hold his exempt rank position, which was actually higher, in the same job position. And then about Mews, doesn't, isn't she in a very similar situation as your client? She works the same job as your client, was lieutenant, was told her position was civilianized, so she left. Is that a similar circumstance? That's exactly right. So what happened with that exactly was she had been in that job as a lieutenant, and what happened, they were trying back many years before, they were trying to civilianize the position. District Chief Sampy told Mews that, and Mews didn't want to, so before she was told she had to leave the position, rather than being told she felt she'd have more power if she just left the position, she just left the position because it was, she was anticipating it'd be civilianized. Then what happened was they couldn't civilian, they couldn't get a civilian to do the job, and the reason why it required knowledge and skill, knowledge and skills that a civilian didn't have, including you have to be FAA certified to work at the airport, civilians don't typically have that sort of certification and it takes a long time to get, and you have to be familiar with fire department procedures and methodology of how they do things, and a civilian didn't do that. So because they couldn't get a civilian to do the job, Sampy got Jezior accommodated into that position, and that's, and incidentally, Leslie Mews also happened to be Ford's sister, and she had that job as a lieutenant before, just before Jezior had it, and it was a short time, they couldn't get a civilianized, so they gave it to Jezior. Mr. Fox, as I understand the department's argument, it's that a lieutenant, in order to qualify to be a lieutenant, you have to meet certain requirements. It's like Ed O'Hare, as procurement officer, may only require five of those ten attributes that a lieutenant needs to do, including one being able to respond emergently to a fire situation, but the lieutenant still has to meet those ten requirements, and that allowing Mr. Jezior to work at Ed O'Hare in the procurement position before he was lieutenant was kind of an accommodation to him, because that job didn't really necessitate having to use all of those skills. But as I see it, the department is now saying, look, if he wants to be a lieutenant, we should be able, he needs to be able to meet all ten qualifications, because we might move him around, because lieutenants need to do all of these things, and that's how we define the position. And so we shouldn't be held almost like, we shouldn't be stopped from saying that we shouldn't be held permanently to the accommodation we provided to him before if he doesn't meet those qualifications. And I think that's kind of the gist of their argument, and I was wondering what your response to that is. My response is twofold. First, no witness ever testified to that. That's wholly lawyer-created argument. No witness testified. He has to be able to fight fires, which is one of the requirements you're referring to. He has to be able to fight fires to be promoted into being a lieutenant. In fact, many lieutenants in the Fire Prevention Bureau don't fight fires, so it's commonly done. And again, that's a wholly lawyer-created argument. Well, they don't fight fires, but they're able to fight fires. No, no, because they're disabled, and that's why they're in the Fire Prevention Bureau, and they got accommodated there. So they don't have to be able to fight fires. And more specifically to your point, District Chief Geis, who was in charge of the airport at the time, testified. This question was asked of him directly. In an emergency, what would be expected of Jezior? He was asked that exact question, and he gave a lengthy description of what would be expected of Jezior, and it didn't include fighting fires. It included things that he could do, and Geis talked about what he was expected to do, and Geis acknowledged that wouldn't be done, and he was the chief in charge of the airport. And again, there's no witness that says, this is why we couldn't do it, because you have to be able to do, Jezior couldn't do all these 10 functions. The lawyers have said that, but not a witness. So, with regard to the disability reason that Commissioner Ford gave, in addition to the fact, and I'll come to this, he said several contradicted things, and his credibility is really not good here. He said that he wasn't given the job because he was disabled, and that there were no jobs for that. And as I indicated, his predecessor, Mews, his Ford sister, did the job, and he wasn't fighting fires in that job either. With regard to the district court's decision, I want to get to this, because the district court's decision was that Helmholt and his dealings with Jezior and his conversation indicated he would try to find Jezior a position at the Fire Prevention Bureau he could do. It was an unknown position with unknown requirements at that point in time when they were discussing it, and subsequent to the conversation, Helmholt sent an email to Jezior's union representative, Buckus, and said, look, I'll offer him a position at the, this is in the email, which we've coded, I'll offer him a position at the Fire Prevention Bureau, we don't know what the position is, but provided he's medically cleared to do it. If Jezior, and this is the important point and why the district court was wrong on, you know, inaccurately characterized the facts on this point, if Jezior chose to accept the promotion, go to the, take his chances, go to the Fire Prevention Bureau, and if he was not medically cleared to do the job, he would be forced off the department and forced to retire. He had that choice, or the choice was stay where you are in your, in your, your now current job as a procurement officer, and you won't get the promotion. That was his choices. So when the district court said it's puzzling that Jezior was uninterested in the job at the Fire Prevention Bureau because he was offered that, that's not exactly true. Jezior was uninterested in risking his career with the fire department, and we laid these facts out at length, it's paragraph 78 in our statement of facts, we discussed it in our brief. He was given that choice, either take the job at the fire, you know, an unknown job with unknown requirements, and if you can't do it medically, then you'll be forced out of the department or keep your current job. And that's... Would you like to save the remainder of your time for rebuttal? Yes. All right. Thank you. Thank you. Thank you, Mr. Fox. Mr. Merrill? May it please the court. Plaintiff filed suit against the city alleging violations of the Americans with Disabilities Act because the city did not create a new lieutenant position in the budget that would allow him to be promoted to a higher rank and receive the corresponding increase in salary, but continue to do the exact same work he did prior to his promotion. Federal law requires no such thing, especially because plaintiff was not even a qualified individual to work as a lieutenant in the Bureau of Operations. The district courts correctly granted summary judgment on both of his ADA claims, and this court should affirm. A couple of questions, Mr. Merrill. The idea of an exempt rank position, what does that mean, and what makes that different from the position that Mr. Jesior held? Yes. So what I'm saying is exempt rank positions are top management positions where you can be appointed to them kind of separate from the collective bargaining agreement, so they're not subject to nicely the same promotion and procedure requirements of how kind of go through the career ranks. They're kind of top-level positions that are appointed and moved potentially on different administrations and when new fire commissioners come in. So it's a completely different factual situation. What happened with McGill that you were asking with is you can still progress kind of behind the scenes, let's call it, at your career rank so that, let's say, when a new administration comes in, you get knocked out of your more senior exempt rank. You still fall back on whatever career rank you're then on, including for pension purposes thereafter. But in the case of McGill, he never changed position, never changed ranks, he never got increased salary from this kind of what's called paper promotion to lieutenant because he was always occupying this higher level position. That position had to be that rank, that higher exempt rank. Same follow-up question that I asked Mr. Fox with regard to the Fire Prevention Bureau. It sounds like there are aspects of that position that might require mobility, it might be implicated by Mr. Jesuer's physical circumstances, and there are other ones that would not be. Is that fair? Yes. What is clear from the record is the plaintiff himself acknowledged that he knew people who were in wheelchairs who worked at the Fire Prevention Bureau. Certain locations had ramps and other accessibility things. When he talked to the city's disability officer, you know, she talked about there could be additional accommodations that could be in place. I think it's important to understand that when we're talking about transferring to the Fire Prevention Bureau, that's not in lieu of any other potential accommodations he could get. There could be additional accommodations on top of that to make sure he's in an assignment that he could perform. But that kind of bureau, that non-operational bureau where people are not required to be capable of firing fires and other emergency responses, is the only place where those type of accommodations could realistically be made. So just starting off on both the claims, the accommodation claim and the disability discrimination claim, he does not meet the requirements under the ADA of a qualified individual. Here it is undisputed that all uniform positions within the Bureau of Operations require employees to be capable of firefighting duties. Plaintiff admitted to that in the response to the city's statement of undisputed materials facts. That's docket entry 115 at paragraph 6, and it is based on witness testimony. It's based on Hemel's declaration stating that as such, it's not just a lawyer-made statement. And plaintiff also admitted that there is no possible accommodations that would allow him to physically perform firefighting duties. That's docket entry 115 at paragraphs 46 and 47. So those two admitted and undisputed facts are frankly the beginning and end of both claims before this court, because they establish that he's not a qualified individual. Everything else is either further elaboration or alternative basis to affirm judgment. Now, plaintiff tried to get around this conclusion, but he avoids the relevant legal issue. For example, he argues that his particular desired assignment at the airport shouldn't involve firefighting duties. But that confuses the essential functions of the position, that is a uniform firefighter or lieutenant in the Bureau of Operations, with the responsibilities of any particular assignment. As this court explained in Tate v. Dart, with respect to lieutenants who worked at the Department of Corrections, whether a particular assignment would mean that employee might never need to do an essential function of lieutenant, that does not answer whether being able to do so remains an essential function. In fact, both this court and other circuits often point to firefighters as the paradigmatic example of emergency response positions that have essential functions that certain employees might rarely have ever performed, but they remain essential functions nonetheless. In addition to not being a qualified individual, Jezior's failure to accommodate claim fails because we did offer him a reasonable accommodation. He was offered the opportunity to transfer as a lieutenant to the non-operational fire prevention bureau. Jezior not only rejected that proposal, but he also just short-changed the interactive process by refusing to entertain anything other than his preferred promotion at the airport. From the beginning, Jezior wanted one and only one accommodation, that was the in-place promotion where he could get more pay, hold a more senior rank, but do the exact same work. The city was not required to acquiesce to that unreasonable request, and he refused to entertain any other alternative options. In fact, the city's disability officer proactively reached out to him to discuss the issue, and he rejected her assistance, explicitly telling her that he was not going to submit an accommodation request with the city, and instead taking his chances with the specific job he wanted in the future when there was a new fire commissioner coming into office. That posturing is antithetical to good faith participation in the interactive process, and its failure falls at his feet. For these various reasons, as well as those discussed in our brief, Jezior has failed to establish a prima facie case of discrimination, but in addition, his claim also fails because the requested in-place promotion would have caused the city undue hardship. Indeed, an employer doesn't need to show any hardship when the requested accommodation requires the creation or recreation of a position. That is because an employer only needs to accommodate people in vacant roles. Here, there was no vacant lieutenant position at his current work site to do procurement work. You know, that was eliminated after lieutenant is part of this civilianization effort, a fact that Jezior expressly admitted when he stated that he expected a new budgeted lieutenant position to be created for him. That admission is found in docket entry 115 of paragraph 76. And in any event, forcing the city to roll back publicly announced multi-departmental efforts to civilianize certain fire department functions constitutes undue hardship. I want to address the medical clearance issue because it was brought up with opposing counsel. Medical clearance is standard practice for new hires, employees returning from FMLA leave, and employees requesting accommodations. It simply requires medical examination that ensures that an employee can safely do certain essential functions of a job with any approved accommodations in place. So it's completely speculative that plaintiff wouldn't have been medically cleared to do some assignment at the Federal Fire Prevention Bureau, in part because it's unknowable what other accommodations he could have requested and received at that bureau if he had actually continued on with the interactive process. And as I said before, he admits that he knew individuals with wheelchairs who worked at the fire department. And just to briefly address his separate disability discrimination claim, for the reasons we've already discussed, that claim also fails because he's not a qualified individual. But in addition, plaintiff has no evidence that he would have received an in-place promotion but for his disability. On the contrary, if he wasn't disabled, we wouldn't even be having this conversation because newly promoted lieutenants by default start as relief lieutenants where they are assigned to operational openings. So in the normal course of business, new lieutenants don't get to stay in the same assignment they held prior to the promotion and do non-operational functions. In other words, plaintiff has asked for something special in his case, which is separate from the accommodation claim, but that's not to be treated the same as a non-disabled newly promoted lieutenant would normally be treated. Also, for the reasons we discussed in our briefing, plaintiff has no evidence of pre-tech or similarly situated firefighters. I'm happy to address any of those arguments beyond our responsive arguments in our briefing, but if your honors don't have questions about those responsive arguments of ours. Counsel, one of the arguments that Mr. Fox makes is that Mr. Giussier didn't want to take the risk to be transferred to the Fire Protection Bureau because he thought that if he didn't pass the medical requirements, medical clearance requirements, that he would be forced into retirement. Is that a realistic risk? I mean, is that, was that a reasonable consideration for him to have had? I think for the reasons I was discussing with the medical clearance requirement, I believe it's entirely speculative and there's nothing to believe on the record that it is a realistic concern. But what I would say is it's not that or his trying to get a lieutenant's current position. As we discussed, he was not a qualified individual for a lieutenant in the operational capacity. So in the scenario where there was no amount of accommodations that could be made for him, the Fire Prevention Bureau, that doesn't mean a promotion in his current role would have automatically been required under the ADA. It just meant that there would be no promotion available under the ADA that would require it because he wasn't a qualified individual in his current capacity. It's possible under the ADA that there are no positions he could do. I'm not saying that's the case here, but if that one did not pan out for the reasons, it wasn't a promotion where he currently was working as the alternative option, that just wasn't an option. Thank you, Mr. Morrell. Thank you. Mr. Fox, we'll move back to you now for a rebuttal argument. Thank you. They spent some time talking about he's not qualified because he couldn't do firefighter duties. And just before he said that, he testified about how people are in wheelchairs at the Fire Prevention Bureau. So there might be paperwork that says what you need to be able to do as a firefighter and to be a lieutenant. Maybe on paper it says that. And Helmholtz did say in a general sense, nobody said this with specifics to the situation here in accommodations. And we know they accommodate people because they just said they accommodate people in wheelchairs. And so the argument that he couldn't do the job, he wasn't qualified to do the job, is just wrong. And District Chief Geis, the chief at the airport, testified in favor of Mr. Gessier and said he could do the job. He wasn't expected. He would never have to, in an emergency, fight fire. Mr. Fox, those lieutenants who are in wheelchairs in the Fire Prevention Bureau, do you know whether they were promoted before they became disabled or were they promoted when they were disabled? I don't know the answer to that question. Is there any evidence in the record about that? Because it would be one thing if the city or if the department promoted someone to a lieutenant when they were disabled. Because I think that would put into question their rationale that Mr. Gessier was not promoted because he couldn't meet the requirements. But on the other hand, if those lieutenants were promoted and became disabled afterwards, then that might distinguish their cases a little bit. I can say this with absolute certainty. When Mr. Gessier got promoted and he went to the fire academy, everybody in his chain of command, because this is in emails, including Brian Helmholtz, including the district chief, including human resources, they all thought he was going to go to the academy and then go back to the airport in his prior job as a procurement officer. It was completely unexpected when Ford came in and said, you can't do the job as a lieutenant that my sister had been doing as a lieutenant. And so just by inference, if they all expected him to do this, the inference is that it's something that can be done and is done. So what you're saying is before Commissioner Ford raised the issue, everyone at the academy just assumed that he met all the qualifications to be a lieutenant? Well, not only at the academy, but his district chief and Brian Helmholtz himself, they're on emails referencing the fact that Michael Gessier is going to go back to the airport as a procurement officer when he's done at the academy. So all these people assume at the inferences that it's expected and it can be done. So I can say that. And that is certainly in the evidence. And then with... Thank you, Mr. Fox. And thank you, Mr. Morrell. The case will be taken under advisement.